**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KELLY TUCKER,<br><br>        Plaintiff,<br><br>    v.<br><br>MARCO RUBIO, in his official capacity as Secretary of State,<br><br>        Defendant. | Civil Action No. 22-1854 (CKK) |

**MEMORANDUM OPINION & ORDER**
(March 4, 2025)

This matter is before the Court on Plaintiff's [31] Motion for Leave to Amend the First Amended Complaint and Defendant's [27] Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. Upon consideration of the parties' submissions and exhibits,[1] the relevant legal authority, and the entire record, the Court shall **GRANT** the Plaintiff's Motion for Leave to Amend and **DENY AS MOOT** the Defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment.

---

[1] The Court's consideration has focused on:
- Plaintiff's First Amended Complaint ("Compl."), ECF No. 13-1;
- Defendant's Motion for Judgment on the Pleading or, in the Alternative, for Summary Judgment, ECF No. 27, and exhibits thereto;
- Plaintiff's Motion for Leave to Amend the First Amended Complaint, ECF No. 31, and exhibits attached thereto, including the proposed Second Amended Complaint, ECF No. 31-1;
- Plaintiff's Opposition to Defendant's Motion for Judgment on the Pleadings, or in the Alternative, for Summary Judgment, ECF No. 33, and exhibits thereto;
- Defendant's Combined Reply in Further Support of Defendant's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment and Opposition to Plaintiff's Motion for Leave to Amend, ECF No. 36; and
- Plaintiff's Reply to Defendant's Combined Reply and Opposition to Plaintiff's Motion for Leave to Amend the Complaint, ECF No. 37.

In an exercise of its discretion, the Court concludes that holding oral argument is not necessary to the resolution of the issues before the Court. *See* LCvR 7(f).

1

# I. BACKGROUND

## A.     Factual Background

Dr. Kelly Tucker brought this action against Antony Blinken, in his official capacity as Secretary of State, for various employment discrimination and retaliation claims.[2] In her First Amended Complaint, Tucker alleges that she was discriminated against on the basis of age, disability, race, and gender, and retaliated against for prior protected activity when she was subjected to various events occurring from 2015 to 2022. *See generally* First Amended Complaint ("Compl."), ECF No. 13-1. Tucker's First Amended Complaint asserts claims under three statutes: the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") ("Counts I–II"), the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA") ("Counts III–IV"); and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII") ("Counts V–VIII"). *See* First Amended Complaint ("Compl."), ECF No. 13-1, ¶¶ 108–203.

Tucker, with an undergraduate degree in history from Spellman College, as well as a master's degree and a Ph.D. in African History from Indiana University, began her employment with the State Department in 2003. Compl. ¶¶ 5–8. She subsequently served in the Democratic Republic of the Congo, then in the State Department's Bureau of African Affairs as an officer with responsibility for Eritrea and Ethiopia. *Id.* ¶ 9. Thereafter, she served in Afghanistan, and she was later assigned to the Rwanda desk from 2011 to 2015. *Id.* ¶ 10.

Tucker is an African American woman, and she was over the age of 40 at the time of filing her First Amended Complaint. *Id.* ¶ 4. Tucker alleges that she suffers from chronic arthritis and a cardiac condition, among other chronic medical conditions. *Id.* ¶¶ 36, 71; *see also* Declaration of Claudette R. Rhone ("Rhone Decl.") Ex. 2, ECF No. 27-3 at 23, 31–32.

---

[2] Secretary Blinken's successor, Secretary of State Marco Rubio, is "automatically substituted as a party" in this action. *See* Fed. R. Civ. P. 25(d).

At the end of 2015, Tucker's basement in Washington, D.C. flooded while she was on an emergency detail in Geneva, Switzerland, causing extensive damage. Compl. ¶ 12–13. Tucker alleges that the State Department required her to take accrued leave instead of affording her weather-and-safety leave. *See id.* ¶¶ 12-16. She also alleges that in 2016, her then-supervisor, Rafael Foley, unexpectedly transferred her to the Chad desk. *See id.* ¶¶ 16-21. Tucker complained about the move and alleged that it was part of a broader hostile work environment created by Foley and supported by another supervisor, Chris Lamora, in which Tucker was humiliated, bullied, harassed, micromanaged, and treated disparately from her white colleagues. *See id.* ¶¶ 19–46.

In 2017, Tucker decided to complain about Foley's treatment of her to Donald Yamamoto, the Principal Deputy Assistant Secretary for the Bureau for African Affairs. *See id.* ¶¶ 26, 47-48.

In response, Tucker claims that Yamamoto immediately removed Tucker from Foley's supervision, and at the same time retaliated against Tucker by assigning her to a different office building on the Department of Navy Hill campus. *See* Compl. ¶¶ 49–51. Around this same time, on September 14, 2017, Tucker contacted an Equal Employment Office ("EEO") Counselor to initiate her first EEO Complaint. *See* Rhone Decl. ¶ 5; Statement of Undisputed Material Facts ("Stmt.") ¶ 1.

Approximately two years later, in 2019, the State Department transferred Tucker to the Office of Economic and Regional Affairs, under the new supervision of Mikael Cleverly. *See* Compl. ¶¶ 63–64, 68; *see also* Def.'s Ex. 4 (Apr. 7, 2022 Formal Complaint of Discrimination), ECF No. 27-3 at 58–71. Shortly after her transfer, however, Tucker had a serious accident and did not return to work until the first week of March 2020. *See* Compl. ¶ 66. A week later, all employees at the Department were sent home to work remotely due to the COVID-19 pandemic. *Id.* ¶ 67. Because Tucker had just returned to work after an extended leave, she was unable to

3

access her work remotely. *Id.* ¶¶ 67–68. The Department gave some employees secure laptops that could access its network remotely, but Tucker did not receive such a laptop. *See id.* ¶¶ 68–70. Instead, Tucker alleges that the Department required her to physically come into the office to log into the network. *See id.* ¶ 69–70. However, concerned about her health given her chronic medical conditions, Tucker requested to come into the office only if the Department guaranteed certain precautions, including having IT technicians meet with Tucker outside of work hours. *See id.* ¶¶ 71–75. After months passed without any success in restoring Tucker's access to the Department network, Cleverly placed Tucker in a "paid-but-not-working" weather-and-safety-leave status. *See id.* ¶¶ 73, 75, 77. Tucker alleges that she did not request this status and that it "isolated her from her colleagues, prevented her from completing meaningful work, and foreclosed her from any opportunities for career development or growth." *Id.* ¶ 76.

In May 2021, the Department warned Tucker that her weather-and-safety-leave status would be terminated and that she would have to return to work the following week. *See id.* ¶ 77. Tucker then hired counsel, who helped facilitate a meeting with a Reasonable Accommodation Analyst. *See id.* ¶ 79–80. During that meeting, the Department agreed to make an IT technician available to meet with Tucker at the office on a scheduled date, after work hours, so she could log into the Department's network while minimizing her risk of exposure to COVID-19. *Id.* ¶ 81.

Tucker alleges that on October 14, 2021, "after a change in management," she finally received a notice that she could come in on October 22, 2021, to meet with an IT technician to log into the Department network. *Id.* ¶ 82. Tucker alleges that she was still on weather-and-safety-leave status at the time she received this notice. *See id.* ¶¶ 86–87. At the time, she was recovering from knee replacement surgery, so she asked to come to the office on November 10, 2021 instead. *Id.* ¶ 83. In the meantime, on November 4, 2021, Tucker requested leave under the Family and

Medical Leave Act ("FMLA") and requested a reasonable accommodation for her disability. *See id.* ¶ 88.

Separately, in February 2020, just before the onset of widespread emergency measures in response to the COVID-19 pandemic, the Department had notified Tucker that it would be conducting a reinvestigation of her security clearance. *See* Def.'s Ex. 7 Att. B (Dec. 16, 2021 Clearance Suspension Letter), ECF No. 27-4 at 6–7. To that end, Department staff instructed Tucker to submit certain required security forms using the Electronic Questionnaires for Investigations Processing ("eQIP") application. *See id.*

Despite being offered several extensions of time to complete these forms, Tucker did not complete the forms through the eQIP application as instructed. *See id.* In October 2021, the Department instructed Tucker that she had 10 days to complete her security forms. *See id.*; Compl. ¶¶ 90–91. Tucker contends that she was unable to complete the forms as requested because she could not get the required eQIP security application to work. *See* Compl. ¶¶ 90–91, 96–97. Instead of using the application to complete the forms and provide an electronic signature as instructed, Plaintiff submitted an archival copy of a prior set of clearance forms she had submitted in 2014, and she submitted the required authorizations for release of information using a cut-and-pasted image of a signature from another set of documents. *See id.* ¶ 91; Def.'s Ex. 7 Att. B (Dec. 16, 2021 Clearance Suspension Letter), ECF No. ECF No. 27-4 at 6–7. On December 16, 2021, the Department notified Tucker that her security clearance was suspended due to her failure to complete her security reinvestigation forms as requested. *See* Def.'s Ex. 7 Att. B (Dec. 16, 2021 Clearance Suspension Letter), ECF No. 27-4 at 6–7; Compl. ¶¶ 94-95, 98.

On February 7, 2022, the Department notified Tucker by letter that she was being placed on paid administrative leave to conduct an investigation based on the suspension of her security

clearance. *See* Def.'s Ex. 7 Att. C (Feb. 7, 2022 Administrative Leave Letter), ECF No. 27-4 at 10–11. The letter also directed Tucker to surrender her credentials, which Tucker states that she did. *See id.*; Compl. ¶¶ 92–93. The letter further instructed Tucker that while on administrative leave, she was required to make herself available to the Department for assignments upon 24 hours' notice. *See* Compl. ¶ 92. The next day, on February 8, 2022, Tucker contacted an EEO Counselor to initiate her Second EEO Complaint. *See* Rhone Decl. ¶ 10; Stmt. ¶ 7.

Tucker alleges that the Department improperly sought information about her EEO Complaint during the security clearance process, including during an interview with her. *See* Compl. ¶¶ 99–100. She further alleges that the Department then conducted a frivolous investigation into her, pursuing an allegation that she made a racist comment while on a telephone call with a person assisting her with her security forms. *See id.* ¶¶ 101–02. Finally, Tucker alleges that during the entire time she was on weather-and-safety-leave, she did not receive any performance reviews, she was excluded from developmental and promotional opportunities, and she was denied a reasonable accommodation that would have allowed her to access her office and log into her computer. *See id.* ¶¶ 112, 140. Tucker's last performance appraisal was due in mid-February 2022. *See* Rhone Decl. ¶ 14; Def.'s Ex. 6, ECF No. 27-3 at 75.

On April 18, 2022, the Department indefinitely suspended Tucker without pay because of the suspension of her security clearance. *See id.*; Compl. ¶¶ 98, 103; Def.'s Ex. 7 Att. D (Apr. 18, 2022 Suspension Letter).

### B. Procedural History

After Tucker filed her First Amended Complaint, Defendant filed a Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment. ECF No. 27. In response, Tucker moved for leave to file a Second Amended Complaint. Pl.'s Mot. for Leave to Amend, ECF No. 31. Tucker's proposed Second Amended Complaint effectively concedes some issues raised

in Defendant's Motion. *See id.* Specifically, Tucker "voluntarily dismisses" the ADEA claims in her First Amended Complaint and, in place of her prior ADA claims—which are inapposite for a federal employee—appropriately recasts those claims as claims under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("Rehabilitation Act"). *Id.* at 4. In addition, Tucker's proposed Second Amended Complaint would significantly add to the allegations of the First Amended Complaint by alleging, among other things, a pervasive hostile work environment, Proposed Second Am. Compl., ECF No. 31-1, ¶¶ 197–226, 265–94; a continuing pattern and practice of unlawful treatment, failure to accommodate her disabilities, disparate treatment from white and male colleagues, and retaliation for engaging in protected activity, *id.* ¶¶ 164–66, 232–34; and repeated efforts to isolate Plaintiff from her colleagues and the work she had previously engaged in, diminish her, degrade her, keep her essentially alone and without work to occupy her, and finally to oust her based on the pretext of a failure to fill out security clearance forms she advised that she was unable to complete because she was not given a secure connection or assistance with a new security application, ¶¶ 167–81, 235–249.

## II. LEGAL STANDARD

The Federal Rule of Civil Procedure direct that the Court should "freely give leave" to amend a complaint "when justice so requires. Fed. R. Civ. P. 15(a)(2). Although "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment" may provide sound reasons to deny leave to amend, in the absence of those circumstances, "the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 372 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)(2)). "Because leave to amend should be liberally granted, the party opposing amendment bears the burden of coming forward with a colorable basis for denying leave to amend." *Williams v. Ellerbe*, 317 F.

Supp. 3d 144, 147 (D.D.C. 2018) (RDM) (quoting *Jones v. Castro*, 200 F.Supp.3d 183, 186 (D.D.C. 2016) (CKK)). "It is an abuse of discretion to deny leave to amend without 'sufficient reason, such as . . . futility of amendment.'" *Hall & Assocs. v. Env't Prot. Agency*, 956 F.3d 621, 629–30 (D.C. Cir. 2020) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)). "Amendment is futile if the amended complaint would not withstand a motion to dismiss," but a proposed amended complaint would survive such a motion "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 630 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### III. ANALYSIS

The Court shall grant Tucker's Motion for Leave to Amend. Defendant Rubio has not carried his burden of showing that any of the considerations that might militate against an amendment are present here. *See Foman*, 372 U.S. at 182 (listing factors); *Ellerbe*, 317 F. Supp. 3d at 147 (explaining that the burden rests with the party opposing the motion for leave to amend). Defendant has not shown any "undue delay" or "bad faith or dilatory motive." *See Foman*, 372 U.S. at 182. The proposed amendment is Tucker's first amendment requiring leave of the Court, so there is no "repeated failure to cure deficiencies by amendments previously allowed." *See id.* And there is no "undue prejudice" to Defendant from allowing an amendment where, as here, the proposed amendment adds claims that are directly responsive to arguments in Defendant's prior dispositive motion, discovery has not yet begun, and Defendant will have a full and fair opportunity to investigate and litigate every claim in the proposed amended complaint. *See Childers v. Mineta*, 205 F.R.D. 29, 32 (D.D.C. 2001) (RMU) (explaining that courts assess prejudice under Rule 15 by considering "the hardship to the moving party if leave to amend is denied, the reasons for the moving party failing to include the material to be added in the original pleading, and the injustice resulting to the party opposing the motion should it be granted" (quoting

6 C. Wright, A. Miller & M. K. Kane, *Federal Practice & Procedure* § 1487 (3d ed. 2001)).

   Defendant's sole remaining argument against granting leave to amend is that the proposed amendment is futile, but this argument is unsuccessful. *See* Def.'s Opp'n to Pl.'s Mot. for Leave to Amend ("Def.'s Opp'n"), ECF No. 36, at 7–31. Defendant argues that the proposed amendment would be futile because Tucker did not exhaust administrative remedies for many of the discrete acts of discrimination that she alleges. *See id.* However, as Tucker correctly notes in her Reply, "because failure to exhaust administrative remedies is an affirmative defense" unless a particular statute requires the plaintiff to plead exhaustion, a plaintiff generally "does not need to plead exhaustion in a complaint." *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 181 n.21 (D.D.C. 2012) (BAH); *see* Pl.'s Reply, ECF No. 37, at 8; *see also Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011). And the Court cannot conclude, from the allegations in the proposed Second Amended Complaint alone, that Tucker's proposed amended complaint does not state a claim based on her purported failure to exhaust administrative remedies. *Cf. Thompson v. Drug Enf't Admin.*, 492 F.3d 428, 438 (D.C. Cir. 2007) (noting that "even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face"). On the contrary, the proposed Second Amended Complaint affirmatively alleges that Tucker filed administrative complaints and satisfied the applicable exhaustion requirements. *See* Proposed Second Am. Compl., ECF No. 31-1, ¶¶ 57, 108, 122, 128, 147, 189–91, 257–59. On this record, Defendants have not carried their burden of showing that Tucker's proposed amendment is futile. Whether Tucker ultimately can produce competent evidence that she exhausted administrative remedies is a question to be resolved at the summary judgment stage, not on a motion for leave to amend the complaint. *See Kim*, 632 F.3d at 719.

In sum, the circumstances presented here favor granting leave to amend. Tucker's proposed Second Amended Complaint adds a substantial number of factual allegations in support of her claims and advances new theories of relief. *See generally* Proposed Second Am. Compl., ECF No. 31-1. Defendant's Opposition raises legitimate arguments about exhaustion, which may ultimately support the entry of summary judgment in Defendant's favor. *See* Def.'s Opp'n at 7–31. But at this early stage, the Court concludes that Tucker's proposed Second Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678. That is all that is necessary for this Court to hold that the proposed amendment is not futile. *See Hall & Assocs.*, 956 F.3d at 630. In the absence of any showing of unfair prejudice to Defendant or other reason for denying leave to amend, the Court shall grant Tucker's Motion.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Plaintiff Tucker's [31] Motion for Leave to Amend is **GRANTED** and Defendant Rubio's [27] Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment, is **DENIED AS MOOT**. The Clerk of the Court is respectfully directed to docket the document at ECF No. 31-1 as Plaintiff Tucker's Second Amended Complaint. Defendant shall then file a responsive pleading or motion in accordance with Federal Rule of Civil Procedure 12.

**SO ORDERED.**

**Dated:** March 4, 2025

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge